IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ROBERT GODFREY,

                        Plaintiff,                          OPINION AND ORDER

        v.                                                  19-cv-560-wmc

ANDREW M. SAUL, Commissioner of
Social Security,

                        Defendant.

        Pursuant to 42 U.S.C. § 405(g), plaintiff Robert Godfrey seeks judicial review of a

final determination that he was not disabled within the meaning of the Social Security Act.

Godfrey contends that remand is warranted because the administrative law judge ("ALJ")

failed to explain the basis for finding Godfrey retained the ability to perform light work

given the weight the ALJ purported to place on the opinion of plaintiff's treating physician,

Dr. Sosso.  Godfrey also contends that the ALJ failed to include a limitation on Godfrey's

residual functional capacity ("RFC") with respect to having the flexibility to sit and stand

and elevate his feet at will in the hypotheticals posed to the vocational expert.  For the

reasons that follow, the court will affirm the Commissioner's decision.


BACKGROUND[1]

**A.  Overview**

        Plaintiff Robert Godfrey has at least a high school education, is able to communicate

in English, and has a history of medium or heavy exertional level work as a lumber stacker,

[1] The following facts are drawn from the administrative record, which can be found at dkt. #8.

production line assembler and material handler.  Godfrey last engaged in substantial gainful activity on August 24 2016, coinciding with his alleged disability onset date.  With a birth date of November 12, 1974, Godfrey was 41 years old at the time of his alleged disability onset date, which is defined as a "younger individual."  20 C.F.R. § 416.963. Godfrey claimed disability based on degenerative disc disease, high blood pressure and diabetes.  (AR 56.)

### B.  ALJ Decision

ALJ Matthew Johnson held an evidentiary hearing via videoconference on June 18, 2018, at which plaintiff appeared personally and by counsel.  As of the alleged onset date of August 24, 2016, the ALJ found that Godfrey had the following severe impairments: degenerative disc disease, dysfunction of major joints of the bilateral knee, obstructive sleep apnea, coronary artery disease with artery bypass surgery and obesity.  (AR 14.)[2]  Next, the ALJ concluded that none of plaintiff's impairments or combination of impairments met or medically equaled any of the listings.  (AR 15-16.)

In crafting Godfrey's RFC, the ALJ further found that Godfrey could "perform light work as defined in 20 CFR 404.1567(b) and 419.967(b)"; "climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds; and occasionally stoop, kneel, crouch, crawl."  (AR 16.)  The ALJ also found that Godfrey would need to be able to "alternate positions between sitting and standing at will and this change in position would be done

---

[2] The ALJ also found that plaintiff's diabetes mellitus, hypertension and peripheral vascular disease were not severe impairments.  (AR 15.)  Plaintiff does not challenge these findings on appeal.

without abandoning his workstation or losing concentration on his assigned work duties."
(*Id.*)  Even so, the ALJ generally discounted Godfrey's testimony that he could not work
because of back and knee pain, at least in part, and specifically discounted his testimony
that he "could only stand for 5 minutes; could not sit in any position without pain; . . .
that he could only sit for 15 minutes"; and that "he could only walk for 30 yards without
the use of a cane."  (AR 16.)

In arriving at these findings, the ALJ discussed in great detail the medical record.
With respect to his back pain, the ALJ noted the results of a February 2017 MRI showing
"only mild degenerative disc disease with no stenosis"; physical examinations showing
tenderness in the lumbar spine but no functional limitations; and plaintiff's decline of
physical therapy and decision to pursue only conservative treatment.  (AR 17.)  With
respect to his knee pain, the ALJ noted that x-rays show degenerative disc disease; plaintiff's
treating physician found no weakness or loss of mobility; plaintiff declined physical
therapy; physical examinations showed normal range of motion and strength; and the
steroid injections he received helped with the pain.  (AR 17-18.)  Finally, with respect to
his obstructive sleep apnea, the ALJ noted poor compliance with use of the prescribed
CPAP machine, as well as his failure to make certain lifestyle changes, including losing
weight and stopping smoking.  (AR 18.)[3]

---

[3]  In addition, the ALJ considered: (1) plaintiff's coronary artery bypass grafting procedure
performed in 2011, but found the medical records reflect that "claimant had not suffered from long
term detriments because of the surgery" (AR 18); (2) plaintiff's obesity, but again noted his refusal
to exercise, modify his diet or consider weight loss surgery (AR 18); and (3) testimony that he used
a cane affecting his mobility, but also found that his treating physician did not recommend such
use (AR 18-19).

Particularly material to plaintiff's challenges on appeal, the ALJ further analyzed the medical opinion evidence, including that of plaintiff's treating physician, Dr. Jessica Sosso, with regard to his physical and mental restrictions.  (AR 19 (citing Ex. 5F).)  On a form, dated June 9, 2017, Sosso opined that Godfrey had the ability to "sit 60-120 minutes at one time in an 8hr day for 6-8 hrs. per day"; "stand 15-30 minutes at one time in an 8 hrs. day 1-2 hrs per day"; and "frequent[ly] lift 5-20 pounds, occasional[ly] lift more than 20 lbs."  (AR 19.)  Sosso ultimately concluded that Godfrey "could work 6-8hrs per day and up to 30-40hrs per week."  (*Id.*)  Dr. Sosso also noted, however, that "claimant would be required to elevate his feet and would likely need to take unscheduled breaks."  (*Id.*)  "In addition, she opined that he needed to work in an environment that would allow flexibility of movement and position."  (*Id.*)

The ALJ found Dr. Sosso's opinions about Godfrey's ability to work "persuasive because they are consistent with diagnostic testing [and] the objective medical findings." (*Id.*)  The ALJ also found that Dr. Sosso's opinion about lifting restrictions were "consistent with the aforementioned residual functional capacity of light work."  (*Id.*)  However, the ALJ concluded that Dr. Sosso's opinions about elevation of feet and unscheduled breaks were "not very persuasive or supported by the record."  (*Id.*)  Specifically, he noted that plaintiff's "exams showed . . . that his straight leg raise was negative and there was no significant edema on exams."  (*Id.*)  With respect to Dr. Sosso's recommendation about the need for flexibility of movement, the ALJ noted that he accommodated this flexibility in his RFC.

The ALJ also reviewed the state agency medical consultants' opinions, including their opinions that Godfrey had the RFC to perform a full range of light work.  The ALJ found the opinions "persuasive and supported by the limited conservative treatment of mostly medications, mild diagnostic testing of the back, improvement of pain with medications and injections, with minimal findings on exam presentations [and] with normal strength in the lower extremity."  (AR 20 (citing Drs. Chan's and Khorshidi's opinions at Exs. 1F, 2F, 3F, 6F).)

Finally, the ALJ determined that while Godfrey could *not* perform his past relevant work -- as a lumber stacker, production line assembler and material handler -- because these jobs required exertional levels exceeding his RFC, but could perform other jobs identified by the VE, Matthew Sprong, that exist in significant numbers in the national economy, including mail clerk, routing clerk, and cashier II.  Accordingly, the ALJ held that Godfrey was not disabled.

## C. Medical Record

In his opening brief to this court, plaintiff relies on the following, handful of medical records from his treating physician and others.  On June 28, 2017, Godfrey saw Dr. Sosso for diabetes follow-up, reporting that "things were going okay.  No major changes."  (AR 450.)  Godfrey also stated that "[h]is pain is about the same," though he "continues to have a lot of left leg pain especially with walking, back pain, knee pain." (*Id.*)  Because the appointment focused on diabetes management, however, Dr. Sosso did not conduct a physical examination of Godfrey's back, knees or feet, nor otherwise comment on his treatment plan, except to note that she refilled pain medication prescriptions.

5

On December 14, 2017, Godfrey saw Dr. Sosso for his annual examination.  Again, he stated that "things are going okay," although he reported "a little bit more right medial knee pain."  (AR 366.)  Dr. Sosso also noted that this is the knee Godfrey "typically has problems with," that it "limits his activities," and that he "has had swelling in the past." (*Id.*)  In that note, Dr. Sosso further mentioned "persistent numbness in the left leg," but found "vascular testing has been normal."  (*Id.*)  As for his back pain, Dr. Sosso noted the earlier MRI, "which showed small disc bulge at L3-L4 and L5-S1 without significant impingement."  (*Id.*).  On physical examination, Dr. Sosso similarly noted that there was "tenderness over the medial aspect" of his right knee, but found a normal range of motion and strength, and that various, other tests were negative.  (AR 370.)  As for his feet, Dr. Sosso noted "absent sensation to monofilament on the left foot," but normal on the right. (*Id.*)  With respect to reported neuropathy on his left foot, Dr. Sosso ordered an EMG to evaluate.

About a month later, on January 25, 2018, Godfrey saw Katherine A. Hanson, P.A.-C., for right knee pain.  (AR 389.)  On physical examination, Hanson found "crepitus on range of motion,"[4] no "laxity" and slight tenderness along joint lines.  (AR 391.)  As a result, she recommended Godfrey try an injection again, having had success when he last had one in June 2015.  She also recommended physical therapy, which Godfrey declined.

---

[4] "Crepitus is grating, crackling or popping sounds and sensations experienced under the skin and joints or a crackling sensation due to the presence of air in the subcutaneous tissue."  "Crepitus," Wikipedia, https://en.wikipedia.org/wiki/Crepitus.

OPINION

The standard by which a federal court reviews a final decision by the Commissioner of Social Security is well-settled.  Findings of fact are "conclusive," so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ.  *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).  Where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner.  *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993).  At the same time, the court must conduct a "critical review of the evidence," *id.*, and insure the ALJ has provided "a logical bridge" between findings of fact and conclusions of law, *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).  As outlined above, Godfrey raises three challenges on appeal, which the court will address in turn.

## I.  Failure to Account for Dr. Sosso's Sedentary Work Limitation

As noted above, the ALJ considered Dr. Sosso's opinion at length and credited most of it, expressly finding that Dr. Sosso's lifting and carrying restrictions were consistent with his conclusions that Godfrey could perform light work.  Plaintiff argues, however, that the ALJ failed to consider properly Dr. Sosso's restrictions with respect to Godfrey's ability to sit and stand, which would have limited him to sedentary work.

7

In the regulations, sedentary work is defined as "one which involves sitting," but "a certain amount of walking and standing is often necessary in carrying out job duties."  20 C.F.R. § 404.1567(a).  The regulation further explains that "[j]obs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  *Id.*  And "occasionally" is defined as "occurring from very little up to one-third of the time" -- in other words, "at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."  Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251, at *5 (S.S.A. Jan. 1, 1983).  Light work, on the other hand, requires "a good deal of walking or standing, or . . . involves sitting most of the time with some pushing and pulling of arm or leg controls."  § 404.1567(b).

Consistent with this sedentary definition, Dr. Sosso opined that Godfrey could sit for six to eight hours per day and walk for one to two hours per day.  (AR 363.)  As such, Dr. Sosso would appear to limit Godfrey to sedentary work, something the ALJ failed to discuss in assessing how much weight to place on her opinions.  Nonetheless, in his opposition brief, the Commission points out that any error is harmless in light of the VE's testimony that there would still be jobs in sufficient number in the national economy even if an individual with the same restrictions in place as in Godfrey's RFC were limited to sedentary work.  Specifically, after reviewing whether there were jobs in the national economy that could accommodate a light exertional level and additional restrictions, the ALJ asked VE Sprong to assume the same restrictions, "except the individual were at the

sedentary exertional level," and then asked, "[w]ould there be any jobs at the sedentary level?"  The VE responded, "Yes," and gave examples of addresser, callout operator and final assembler.  (AR 49.)

In his reply brief, plaintiff's counsel acknowledges as much, but argues that the error is still not harmless because the VE also testified that there would be no jobs if the "sit/stand option" were included, which he also refers to as "sedentary with flexibility." (Pl.'s Reply (dkt. #13) 14.)  However, this is not a faithful characterization of the hearing transcript.  The ALJ actually asked the VE to "assume the same restrictions as in hypothetical three, except that the individual were at the sedentary exertional level."  (AR 49.)  Critically, in hypothetical three, "the individual would need to be allowed to alternate positions at will."  (*Id.*)  As such, the VE testified that a person with the same RFC as Godfrey, but limited to sedentary rather than light exertional work, would be able to perform jobs in sufficient numbers in the national economy.  As such, the court agrees with the Commissioner that any error in failing to consider Dr. Sosso's limitations with respect to sitting and standing is harmless.[5]

## II. Rejection of Dr. Sosso's Requirement that Godfrey Elevate His Feet

Plaintiff next faults the ALJ for failing to place weight on Dr. Sosso's recommendation that Godfrey would need to elevate his feet at work.  (AR 363 (on form, Sosso checked "yes" for "Feet Elevated").)  As detailed above, the ALJ discounted this

---

[5] In addition, the state agency medical consultants both opined that plaintiff *was* capable of light work, something on which the ALJ placed weight.  (AR 20.)

portion of Dr. Sosso's report on the basis that plaintiff's physical "exams showed . . . his straight leg raise was negative and there were no significant edema on exams. Furthermore, the limitations are vague and inconsistent with the totality of the medical record that support more exercise with working and recommendations to exercise." (AR 19 (citing Exs. 1F, 2F, 3F, 6F).)

In his brief, plaintiff argues that the medical record supports Dr. Sosso's limitation, specifically pointing to a note from April 14, 2016, in which she noted edema of the legs and recommended compression socks. (Pl.'s Opening Br. (dkt. #10) 14 (citing AR 340-41).) Plaintiff also recounted other medical records describing left leg pain and numbness, surgery to remove a blood clot in May 2016, and degenerative joint disease of a right knee. (*Id.* at 14-15.) However, none of these medical records describe edema or otherwise conclude that plaintiff needs to elevate his feet throughout the day. Indeed, the one record that noted edema occurred within a month of discovery of Godfrey's blood clot. On this record, the court finds no error in the ALJ's reasons for discounting this portion of Dr. Sosso's opinion or, at minimum, finds the ALJ provided a logical bridge between the medical evidence and his decision to reject this portion of her opinion. *See Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018) (finding no error in not including leg elevation restriction where "[n]o objective medical evidence post-dating Britt's alleged onset date supports his allegation that he must elevate his leg at work"); *Johll v. Colvin*, No. 13-cv-630, 2014 WL 4678266, at *7 (W.D. Wis. Sept. 18, 2014) (affirming ALJ's rejection of claimant's testimony that he had to elevate his legs where there were "no treatment notes ever direct[ing] plaintiff to elevate his legs daily").

10

### III.  Failure to Pose Hypothetical Including Sit and Stand Option to VE

In his opening brief, plaintiff finally argued that the ALJ's RFC findings failed to account for the fact that Godfrey would need to "alternate positions between sitting and standing at will and this change in position would be done without abandoning his workstation or losing concentration on his assigned work duties."  (AR 16)  However, plaintiff dropped this argument in his reply brief; for good reason as it turns out, since the hearing transcript reflects that the ALJ *did* include this restriction in the hypotheticals posed to the ALJ.

Specifically, the ALJ posed two hypotheticals to the VE concerning flexibility between sitting, standing and walking.  In the first hypothetical, the ALJ asked the VE to assume the same restrictions as in an earlier hypothetical, but *also* assume that the individual "can assume no position for longer than 45 minutes."  (AR 47.)  The VE responded that the mail clerk and routing clerk jobs would still be available, but that the cashier II job would be reduced by about 75%.  (AR 48.)  The ALJ then asked the VE to assume the same restrictions as in an earlier hypothetical but that "instead of alternating positions for 45 minutes, the individual would need to be allowed to alternative positions at will."  (AR 48-49.)  The VE again responded that the same jobs would be available.  (*Id.*)  As such, the court rejects this final basis for remand as well.

ORDER

IT IS ORDERED that the decision of defendant Andrew M. Saul, Commissioner of

Social Security, denying plaintiff Robert Godfrey's application for disability and disability

insurance benefits and supplemental security income is AFFIRMED.  The clerk is directed

to enter judgment in favor of defendant.

Entered this 29th day of April, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

12